Leah L. Chavarria, Esq.
CA Bar # 297506
2251 San Diego Ave., STE B-200
San Diego, CA 92110
leah@hurwitzholt.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| Migdalia Magaly JIMENEZ DOMINGO,<br><br>Petitioner,<br><br>v.<br><br>Todd BLANCHE, Acting Attorney General of the United States, Department of Justice;<br><br>Markwayne MULLIN, Secretary of the U.S. Department of Homeland Security;<br><br>David VENTURELLA, Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement;<br><br>Thomas GILES, Director of Los Angeles Field Office, U.S. Immigration and Customs Enforcement;<br><br>WARDEN, Adelanto ICE Processing Center;<br><br>Respondents. | Case No. 5:26-cv-06268<br><br>Agency No. 208-183-082<br><br>**PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2241 AND ORDER TO SHOW CAUSE** |

## INTRODUCTION

1. Petitioner, Migdalia Magaly Jimenez Domingo (hereinafter "Petitioner" or "Mrs. Jimenez Domingo"), a 34-year-old national of Guatemala, has been detained in violation of her due process rights since her re-detention on October 6, 2026, while attending an asylum interview at the Los Angeles Asylum Office.
2. Mrs. Jimenez Domingo is hospitalized, as of midnight on October 20, 2026. Counsel has been unable to obtain any information related to her health condition.
3. Mrs. Jimenez Domingo's first and only entry was without inspection on or about October 23, 2015, with her then 5-year-old son. They were detained, served Notices to Appear ("NTA") and released on their own recognizance. They filed asylum applications before the Court and continued to fight their removal proceedings.
4. On March 6, 2020, an immigration judge ("IJ") denied Mrs. Jimenez Domingo and her son asylum and related relief and ordered them removed. They appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and while their case was pending on appeal, the Department of Homeland Security ("DHS") exercised prosecutorial discretion and joined Mrs. Jimenez Domingo and her son in a Motion to Dismiss Removal Proceedings. On August 30, 2022, the BIA granted the parties' Joint Motion to Dismiss Removal Proceedings.

5. On February 8, 2024, Mrs. Jimenez Domingo filed Form I-589, *Application for Asylum and for Withholding of Removal,* affirmatively with United States Citizenship and Immigration Services ("USCIS") with her husband included as a derivative on her application. On March 17, 2025, she received an Employment Authorization Document ("EAD") from USCIS, which remains valid through March 16, 2030.

6. On October 6, 2026, Mrs. Jimenez Domingo appeared for an asylum interview at the Los Angeles Asylum Office. When she appeared, the Asylum Office cancelled her interview and escorted her to meet with Immigration and Customs Enforcement ("ICE") agents who arrested and detained her. She and counsel from our office were not provided with an arrest warrant or any indication that an arrest warrant existed. ICE then transported her to a processing facility, issued her a new NTA, and transported her to the Adelanto ICE Processing Center, where she remains.

7. Mrs. Jimenez Domingo has no criminal history[1] throughout her 11 years in the United States.

---

[1] On December 28, 2015, two months after entering the United States, Mrs. Jimenez Domingo was involved in a minor traffic incident and failed to stop. She was arrested and charged with a misdemeanor offense for failing to stop for an accident and two traffic infractions for driving without a license and failing to stop at a red light. On April 27, 2016, she admitted responsibility for the two traffic infractions and the misdemeanor charge was dismissed. She has no criminal convictions and has had no

8. Therefore, Petitioner files this petition requesting immediate release form unlawful custody. Petitioner asks this Court to find that her continued detention violates due process and that she must be released immediately back to the care and custody of her family in San Diego; that she may not be transferred during the pendency of this petition; that this court make an order to show cause.

## JURISDICTION

9. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

11. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

12. The provisions in 8 U.S.C. §§ 1252(g) and 1252(b)(9) do not strip this Court of jurisdiction. Petitioner is not contesting the commencement or adjudication of removal proceedings against her, nor is she raising an issue with respect to the execution of removal. Petitioner does challenge her re-detention and unlawful arrest. The petition is independent of the removal proceedings and all questions

---

other contact with law enforcement in the decade she has been in the United States since.

related to the commencement of removal proceedings or any part of the removal process. "[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Additionally, Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025). Thus, this Court is not stripped of jurisdiction by Sections 1252(g) and 1252(b)(9).

## VENUE

13. Venue is proper because Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, which is within the jurisdiction of this District. Further, a substantial part of the events or omissions giving rise to her claims occurred in this District and no real property is involved in this action. 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

14. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

15. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as

"perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

***Petitioner***

16. Petitioner, Mrs. Jimenez Domingo, is a Guatemalan national who is in custody at the Adelanto ICE Processing Center located at: 10400 Rancho Road, Adelanto, CA 92301. She is in the custody, and under the direct control, of Respondents and their agents.

***Respondents***

17. Respondent Warden of Adelanto ICE Processing Center has immediate physical custody of Petitioner pursuant to the facility's contract with U.S. Immigration and Customs Enforcement to detain noncitizens and is a legal custodian of Petitioner. Respondent Warden is a legal custodian of Petitioner.

18. Respondent Thomas Giles, is sued in his official capacity as the Director of the Los Angeles Immigration and Customs Enforcement Field Office of U.S. Immigration and Customs Enforcement. Respondent Giles is a legal custodian of Petitioner and has authority to release him.

19. Respondent David Venturella, is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is the legal custodians of Petitioner.

20. Respondent Markwayne Mullin of DHS is sued in his official capacity as the Secretary of the DHS. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention and custody. Respondent Secretary is a legal custodian of Petitioner.

21. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice ("DOJ"). In that capacity, she has the authority to adjudicate removal cases and to oversee the EOIR, which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

22. Petitioner, Mrs. Jimenez Domingo, a 34-year-old national of Guatemala, has lived in the United States since her only entry on October 23, 2015. She came to the United States with her then 5-years old son. They fled Guatemala in fear for their lives after several separate incidents of threats and violence. They turned themselves into immigration officials, were detained and served Notices to Appear. Ex. A, Notice to Appear. DHS charged them as being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection and is present without admission. *Id.* The following day they were

released on their own recognizance with reporting requirements in Arizona. Ex. B, Order of Release on Recognizance.

23. On December 28, 2015, two months after entering the United States, Mrs. Jimenez Domingo was involved in a minor traffic incident and failed to stop. She was arrested and charged with a misdemeanor offense for failing to stop for an accident and two civil traffic infractions for driving without a license and failing to stop at a red light. Ex. C, Ticket and Complaint and Plea Agreement. On April 27, 2016, she admitted responsibility for the two civil traffic infractions and the misdemeanor charge was dismissed. *Id*. Therefore, she has no criminal history and has had no other contact with law enforcement in the decade she has been in the United States since.

24. Mrs. Jimenez Domingo and her son appeared *pro se* before the Phoenix Immigration Court for their first hearing on March 6, 2016, and on May 21, 2016, venue was changed to the San Diego Immigration Court. On June 15, 2016, she appeared for a scheduled check-in with ICE in San Diego after her proceedings were transferred to San Diego. Ex. D, Form G-56: Call-in Letter.

25. Ms. Jimenez Domingo appeared *pro se* again twice more before the San Diego Immigration Court, each time being granted additional time to find an attorney. She then hired undersigned Counsel's office and on June 12, 2018, she and her

son filed Forms I-589, Application for Asylum and For Withholding of Removal with the San Diego Immigration Court.

26. Mrs. Jimenez Domingo appeared for her individual hearing on April 16, 2019[2], and at the conclusion of the hearing the Immigration Judge ("IJ") indicated he would issue a written decision in her case. On March 6, 2020, the IJ denied Mrs. Jimenez Domingo and her son asylum and related relief and ordered them removed. They appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and while their case was pending on appeal, the Department of Homeland Security ("DHS") exercised prosecutorial discretion and joined Mrs. Jimenez Domingo and her son in a Motion to Dismiss Removal Proceedings. On August 30, 2022, the BIA granted the parties' Joint Motion to Dismiss Removal Proceedings. Ex. E, BIA Order dismissing removal proceedings, dated August 30, 2022.

27. On February 8, 2024, Mrs. Jimenez Domingo filed Form I-589, Application for Asylum and for Withholding of Removal affirmatively with United States Citizenship and Immigration Services ("USCIS") and her husband was included as a derivative on her application. Ex. F, Form I-589, Receipt Notice. On March 17, 2025, she received an Employment Authorization Document ("EAD") from

---

[2] On April 16, 2019, the day of their scheduled individual hearing at the San Diego Immigration Court, Mrs. Jimenez Domingo was late arriving to Court and the IJ proceeded in absentia and ordered her removed; however, because the IJ was still on the bench when Mrs. Jimenez Domingo arrived just minutes later, her Counsel moved to reopen the proceedings and the IJ vacated the order of removal and reopened removal proceedings.

USCIS, which remains valid through March 16, 2030. Ex. G, Copy of Valid EAD.

28. On October 6, 2026, Mrs. Jimenez Domingo appeared at the Los Angeles Asylum Office for a purported scheduled asylum interview. Ex. H, Asylum Interview Notice. However, once she appeared, the Los Angeles Asylum Office canceled her interview and escorted her to an office where she encountered Immigration and Customs Enforcement ("ICE") agents. The agents informed her they were arresting her. They did not present an arrest warrant. Counsel from our office explained to the agents Mrs. Jimenez Domingo has two minor children, ages 16 and 9, and that the 9-year-old daughter is undergoing evaluation for a possible heart condition after having to be seen at the Emergency Department on several occasions for an increased heartrate. Additionally, ICE agents were also informed Mrs. Jimenez Domingo, herself has medical conditions, one of which is a nasal issue that requires surgery. Nevertheless, the agents insisted on detaining her and transported her to a processing facility.

29. The officers transported her to an ICE field office. There, the officers served her with a new NTA pursuant to 8 U.S.C. § 1229a and transported to the Adelanto ICE Processing Center, where she remains. Ex. I, Second Notice to Appear. DHS has charged Petitioner as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) (entry to the United States without inspection) and inadmissibility under 8 U.S.C. §

1182(a)(7)(A)(i)(I) (as someone who at the time of admission was not in possession of a valid entry document), which is in conflict with the first charge.

30. Since being detained, Mrs. Jimenez Domingo has complained frequently to counsel that she is suffering tremendously because of the condition with her nasal pathways, specifically because of the excessive use of the air conditioning system in the facility. She has only been prescribed medication. The medication is the same medication she had taken previously, but ceased taking because it was not effective in treating her condition. Thus, her medical condition is not being treated effectively and may be the reason for her present hospitalization. However, Counsel is unable to confirm the basis for her present hospitalization as information has been unobtainable from calling ICE or calling the hospital.

31. Therefore, upon consideration of the legal bases below, Petitioner requests this court issue a habeas order requiring she be immediately released from custody because there is no basis for her continued detention.

## LEGAL FRAMEWORK

32. The Immigration and Nationality Act ("INA") prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings conducted pursuant to 8 U.S.C. § 1229a. The INA provides for mandatory detention of noncitizens subjected to an expedited removal order imposed pursuant to 8 U.S.C.

§ 1225(b)(1) and for certain other noncitizen applicants for admission to the U.S. who are deemed not clearly entitled to be admitted. *See* 8 U.S.C. § 1225(b)(2).

33. Immigration detention "has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (internal citations omitted); *see also* 8 U.S.C. 1226(a), (b); 8 C.F.R. 1236.1(c)(8).

34. Someone like Petitioner who was previously released from custody has been deemed, to be neither a flight risk nor a danger. 8 C.F.R 1236.1(c)(8) (authorizing release of noncitizens under 1226(a) if they "would not pose a danger to property or persons," and are "likely to appear for any future proceeding"); 8 C.F.R. 212.5(b) (authorizing parole from custody of noncitizens deemed "neither a security risk nor a risk of absconding"). Notably, in this case, Petitioner was arrested two months after entering the United States in 2015, but the sole misdemeanor charge was dismissed and she admitted responsibility for two civil traffic infractions and was ordered to a pay a fine, which she did. Thereafter, she continued to routinely appear at ICE in order to comply with her reporting requirements. Additionally, her removal proceedings were dismissed based on a joint motion with DHS, she filed an application for asylum affirmatively and was granted employment authorization. Clearly, she has continued to present not risk

or flight nor a danger to her community in the decade plus she has been in the United States.

35. In cases of individuals previously released by DHS, re-detention under section 1226(a) requires an individualized determination of a material change in circumstances relating to flight risk or danger. *See Ortega*, 415 F.Supp.3d at 968 ("DHS re-arrests individuals only after a 'material' change in circumstances." (citing *Saravia*, 280 F.Supp.3d at 1197)); *see also Matter of Sugay*, 171 I&N Dec. 637, 640 (BIA 1981) ("[W]here a previous bond determination has been made by an immigration judge, no change should be made by [DHS] absent a change of circumstance.").

36. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas v. Davis*, 533 U.S. 678 (2001)). These due process rights are both substantive and procedural.

37. "The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

38. These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

39. Substantive due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas*, 533 U.S. at 690–92; *see also Demore v. Kim*, 538 U.S. 510, 519–20, 527–28, 31 (2003).

40. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis added). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C., Gov't*, 864 F.3d at 683 (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)

(same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (same, in parole context).

41. After an initial release from custody on conditions, even a person paroled following a conviction for a criminal offense for which they may lawfully have remained incarcerated, has a protected liberty interest in that conditional release. *Morrissey* at 408 U.S. at 482. As the Supreme Court recognized, "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* "By whatever name, the liberty is valuable and must be seen within the protection of the [Constitution]." *Id.*

42. This reasoning applies with equal if not greater force to people who were granted release on their own recognizance from civil immigration detention and were apprehended before their removal order became final, like Petitioner. Noncitizens living in the United States, like Petitioner, have a protected liberty interest in their ongoing freedom from confinement. *See Zadvydas*, 533 U.S. at 690. "Given the civil context [of immigration detention], [the] liberty interest [of noncitizens released from custody] is arguably greater than the interest of parolees in *Morrissey*." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (citing *Morrissey*, 408 U.S. at 487).

43. Most notably in this case, ICE released Mrs. Jimenez from prior custody and essentially entrapped her, by detaining her at her scheduled asylum interview with

USCIS. To date, Mrs. Jimenez Domingo has no criminal convictions and therefore no basis for ICE to ignore Mrs. Jimenez Domingo's constitutional right to liberty and a pre-deprivation hearing before re-detention. At a minimum, given ICE's clear knowledge of her presence in the United States, her address and the fact she had routinely appeared at ICE check-ins for over a decade and had been granted employment authorization based on a pending affirmative action, ICE could have provided her with a pre-deprivation hearing if they were intending to rescind her release on recognizance instead of ambushing her at an asylum interview she willingly and voluntarily appeared for after being scheduled.

## <u>CLAIMS FOR RELIEF</u>

### CLAIM ONE

**Violation of the Fifth Amendment to the United States Constitution (Substantive Due Process – Re-Detention)**

44. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

45. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

46. Immigration detention is constitutionally permissible only when it furthers the government's legitimate goals of ensuring the noncitizen's appearance during removal proceedings and preventing danger to the community. *See id.* When the Government has previously decided to release a noncitizen and there is no evidence in the record of any changed circumstance that might have caused the Government to reconsider its initial decision to release the noncitizen, courts have found the Government's interest in re-detention is low. *Doe v. Chestnut*, No. 1:25-cv-01372CDB (HC), 2025 WL 3295154, at *10 (E.D. Cal. Nov. 26, 2025) (citations omitted).

47. "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp 3d 1025, 1032 (N.D. Cal. 2025) (citing *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); J*orge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)).

48. Many courts in this district have joined a number of district courts to recognize that noncitizens have a significant liberty interest in "continued freedom after release on own recognizance," *Alegria Palma v. Larose*, No. 25-cv-1942-BJC-

MMP, ECF No. 14, at *6 (S.D. Cal. Aug. 11, 2025) (emphasis added), and in "freedom from imprisonment" after "the government grants a [noncitizen] parole into the country," *Sanchez v. LaRose*, No. 25-CV-2396-JESMMP, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025) (emphasis added). *See also Miguel v. Bondi et al.*, 26-CV-1636 JLS (SBC) (S.D. Cal. Mar. 27, 2026) ("Petitioner has a protected liberty interest in remaining out of custody."); *Prieto-Cordova*, No. 25-cv-2824-CAB-DDL, 2025 WL 3228953 (S.D. Cal. Nov. 19, 2025); *Faizyan v. Casey*, No. 25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); *Ramazan M. v. Andrews*, No. 25-cv-01356-KES-SKO (HC), 2025 WL 3145562 (E.D. Cal. Nov. 20, 2025); *Gomez Vilela v. Robbins*, No. 25-cv-01393-KES-HBK (HC), 2025 WL 3101334 (E.D. Cal. Nov. 6, 2025); *Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025); *Hyppolite v. Noem*, No. 24-cv-4304 (NRM), 2025 WL 2829511 (E.D. N.Y. Oct. 6, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025); *Ramirez Tesara v. Wamsley*, No. 25-cv-01723-MJPTLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025); *E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025).

49. Petitioner is not a flight risk or danger to the community, as evidenced by her complete lack of criminal convictions. Notably, while prior release documents by ICE indicate that violating a law is grounds sufficient to revoke release, in this

case, there is no evidence that Mrs. Jimenez committed a crime and in fact has only committed two civil traffic infractions nearly 11 years ago. There is insufficient evidence to show a change in circumstance that would cause DHS to reconsider its initial decision to release her on her own recognizance. Had there been, they had nearly 11 years to do so and did not until she was scheduled to appear for an asylum interview and arrested her only then when she appeared at an immigration office voluntarily. Accordingly, Petitioner is being detained in violation of the Due Process Clause of the Fifth Amendment.

## CLAIM TWO

### Violation of the Fifth Amendment to the United States Constitution (Procedural Due Process – Re-Detention)

50. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

51. As part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding re-detention after his release. *See Young v. Harper*, 520 U.S. 143, 146–47 (1997); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *Morrissey*, 408 U.S. at 482–83; *see also Ortega*, 415 F. Supp. 3d at 969–70 (holding that a noncitizen has a protected liberty interest in remaining out of custody following an IJ's bond determination).

52. Accordingly, "[i]n the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's

asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990 (cleaned up); *Zinermon*, 494 U.S. at 127 (Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."). In the immigration context, for such hearings to comply with due process, the government must bear the burden to demonstrate, by clear and convincing evidence, that the noncitizen poses a flight risk or danger to the community. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *see also Martinez v. Clark*, 124 F.4th 775, 785, 786 (9th Cir. 2024).

53. Petitioner's re-detention without a pre-deprivation hearing violated due process. Nearly 11 years after her release in 2015, Respondents re-detained Petitioner with no notice, no explanation of the justification for her re-detention, and no opportunity to contest her re-detention in front of a neutral adjudicator before being taken into custody.

54. Petitioner has a profound personal interest in his liberty. *See Alvarenga Matute v. Wofford*, 2025 WL 2996577, * 4 (E.D. Ca. Oct. 24, 2025) (confirming that noncitizen with an outstanding removal order had a protected liberty interest due to his previous conditional release).

55. Prior to her re-detention in October of 2026, Petitioner had no notice of Respondents' intention to re-detain her and no opportunity to contest that action.

Because the private interest in freedom from immigration detention is substantial, due process requires the government to bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community *before* re-detaining him. *See e.g.*, *Rodriguez Diaz v. Kaiser*, 2025 WL 3011852, *11 (N.D. Ca. Sep. 16, 2025).

56. The government has no legitimate interest in detaining Petitioner without a hearing. *See e.g.*, *Peters v. Wofford*, 2025 WL 2299801, *7 (E.D. Ca. Aug. 8, 2025) (finding that "the government's asserted interest is hinged on mere speculation about [the noncitizen's] risk of flight or dangerousness" given that noncitizen was complying with terms of his probation when detained); *Noori*, 2025 WL 2800149 at *11 ("Respondents did not provide Petitioner individualized notice and reasoning prior to his arrest and detention on June 12, 2025 and have presented no legitimate reason for why those decisions were made. Any governmental interest of efficient administration of immigration laws . . . does not outweigh these first two factors."). Bond hearings are a routine part of immigration court proceedings, imposing a minimal cost to the government. *See Doe v. Becerra*, --- F.Supp.3d ----, 2025 WL 691664, *6 (E.D. Ca. March 3, 2025). Nothing in Petitioner's record suggests that she would abscond or endanger the community before a bond hearing could be carried out given her history of complying with court orders. *See, e.g.*, *Jorge M.F. v. Wilkinson*, 2021 WL 783561

*3 (N.D. Cal. Mar. 1, 2021); *Vargas v. Jennings*, 2020 WL 5074312, *3 (N.D. Cal. Aug. 23, 2020) (finding that "the government's concern that delay in scheduling a hearing could exacerbate flight risk or danger is unsubstantiated in light of petitioner's strong family ties and his continued employment during the pandemic as an essential agricultural worker"). The government has not sufficiently demonstrated that changed circumstances warrant her re-detention.

**CLAIM THREE**

**Violation of 8 U.S.C. § 1357(a)(2): Warrantless Arrests Without Probable Cause of Flight Risk**

57. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

58. Respondents arrested Petitioner without probable cause of flight risk and without a warrant. Petitioner has complied with DHS's order of release on her own recognizance. She has appeared at every hearing, every interview, and complied with every court order. There is nothing in Petitioner's case that suggests she would be a flight risk sufficient for a warrantless arrest.

59. Notably, in *Vasquez Perdomo v. Mullin*, __ F. Supp. 3d __, No. 2:25-CV-05605-MEMF-SP, 2026 WL 2751388 (C.D. Cal. Sept. 2, 2026), a court in this district recently granted a preliminary injunction in the Central District of California clarifying Respondents' authority to make warrantless immigration arrests in the interior of the United States. After extensive discovery, full briefing, and

argument, the court held that such arrests cannot occur without a "*prearrest individualized determination* by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained." *Id.* at *31 (emphasis added). Importantly, the court held that a later warrant cannot supply that missing "escape" determination.

60. *Vasquez Perdomo*'s findings of fact and conclusions of law contradict recent decisions in this District regarding warrantless arrests. Those decisions have treated the regulation at 8 C.F.R. § 287.3 as "curing" a warrantless arrest so long as a warrant is issued within 48 hours. *See, e.g.*, *Garcia-Juarez v. Blanche*, No. 26-cv-3007-LL-DEB, ECF No. 18, at 3 (S.D. Cal. June 30, 2026). But *Vasquez Perdomo* held that § 287.3 only applies to a person arrested "under the authority contained in" 8 U.S.C. § 1357(a)(2)—authority that requires probable cause of both unlawful presence and likelihood of escape *before* an arrest is made.

61. *Vasquez Perdomo* also found "ample evidence that Defendants have an ongoing policy and practice of conducting warrantless arrests in violation of the requirement to conduct a likelihood-of-escape analysis." *Vasquez Perdomo*, 2026 WL 2751388, at *14. More specifically, it found "a coordinated set of policies" involving "no escape risk assessment, escape risk assessment based solely on unlawful status, and escape risk assessment based on false assertions," which "operate in tandem" to avoid the statutory requirement and thereby violate federal

law. *Id.* at *17. Those findings confirm that not only was Respondents' warrantless arrest of Petitioner without probable cause unlawful, a bond hearing that is independently available under § 1226(a) is not the correct remedy. Thus, this Court should order his immediate release.

62. Before the arrest, Respondents failed to make an individualized finding of flight risk. The failure to meet these requirements is a violation of 8 U.S.C. § 1357(a)(2).

## CLAIM FOUR

### Violation of 8 C.F.R. § 287.8(c)(2)(ii): Warrantless Arrests Without Reason to Believe of Flight Risk

63. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

64. Respondents arrested Petitioner without a warrant and without "reason to believe" that she was "likely to escape before a warrant can be obtained" in violation of 8 C.F.R. § 287.8(c)(2)(ii). Notably, Petitioner voluntarily appeared for what she believed was to be her interview on her asylum application. There are no reasonable facts in this case that would justify arrest and detention here.

65. Arrest in violation of the regulation is unlawful. *See Sanchez v. Sessions*, 904 F.3d 643, 650 (9th Cir. 2018); *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019).

///
///

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Issue an order preventing Respondents from transferring Petitioner;

3) Issue an order to show cause and require a response within three days from Respondents as to why this petition should not be granted, pursuant to 28 U.S.C. § 2243 or another timeline so determined by the Court;

4) Declare that Petitioner's detention is unlawful;

5) Issue a writ of habeas corpus requiring Respondents to immediately release Petitioner because her re-detention and unlawful arrest was in violation of her due process rights; that she be released without a monitoring device such an ankle monitor or wrist watch; and that her removal proceedings must be transferred to the immigration court nearest her home;

6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act (EAJA), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

7) Grant any other and further relief that this Court deems just and proper.

Respectfully submitted,

Dated: October 22, 2026

/s/ *Leah L. Chavarria*
Leah L. Chavarria
*Counsel for Petitioner*

**LIST OF EXHIBITS (redacted for privacy)**

| | |
|---|---|
| EXHIBIT A: | First Notice to Appear |
| EXHIBIT B: | Order of Release on Recognizance |
| EXHIBIT C: | Ticket and Complaint and Plea Agreement |
| EXHIBIT D: | Form G-56, Call-in Letter |
| EXHIBIT E: | BIA Order dismissing removal proceedings |
| EXHIBIT F: | Form I-589 Receipt Notice |
| EXHIBIT G: | Employment Authorization Document |
| EXHIBIT H: | Asylum Interview Notice |
| EXHIBIT I: | Second Notice to Appear |

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Migdalia Magaly Jimenez Domingo, and submit this verification on her behalf. I hereby verify under penalty of perjury under the laws of the United States and the State of California that the factual statements made in the foregoing Petition for Writ of *Habeas Corpus* are true and correct to the best of my knowledge.

Dated this 22nd day of October, 2026.

/s/ *Leah L. Chavarria*
Leah L. Chavarria
*Counsel for Petitioner*